UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| SAMUEL BIGLEY | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. 6:18-CV-00303-JDK |
| | ) | |
| vs. | ) | |
| | ) | |
| NAVIENT SOLUTIONS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT NAVIENT SOLUTIONS, LLC'S MOTION FOR SUMMARY
JUDGMENT AND INCORPORATED MEMORANDUM OF LAW**

This Court should grant summary judgment in favor of Defendant Navient Solutions, LLC ("NSL") on Plaintiff Samuel Bigley's ("Bigley") Complaint [ECF No. 1]. The gravamen of the Complaint is that NSL called Bigley's cellular telephone "at least 35 times" with an automated telephone dialing system ("ATDS") and/or using prerecorded messages to collect on his federal student loans after he asked NSL to stop calling him. Compl. at 2, ¶ 15. But Congress removed such calls from the reach of the Telephone Consumer Protection Act ("TCPA") when it enacted the Bipartisan Budget Act of 2015 (the "Budget Act"), effective November 2, 2015. Therefore, whether NSL used an ATDS or prerecorded messages when calling Bigley is immaterial. The statute does not apply, and Bigley's TCPA claims fail as a matter of law.

## I. STATEMENT OF THE ISSUE

Whether the plain text of the TCPA, as amended by the Budget Act, bars all TCPA claims against NSL—including the claims in Bigley's Complaint—for calling a borrower using an ATDS or prerecorded message without consent, *if* NSL is calling to collect on student loans guaranteed by the United States under the Federal Family Education Loan Program ("FFELP").

Short answer: Yes. *See, e.g.*, *Gaza v. Navient Sols., LLC*, No. 8:18-cv-1049-MSS-SPF, at *5 (M.D. Fla. Jan. 23, 2019), ECF No. 36[1] (holding that any calls placed by NSL seeking payment of the federally guaranteed loans at issue "were exempt from the provisions of the TCPA by the plain language of the statute"); *Green v. Navient Sols., LLC*, No. 1:17-CV-1453-VEH, 2018 WL 6303775, at *5-7 (N.D. Ala. Nov. 29, 2018) (holding that the TCPA, as amended by the Budget Act, barred the plaintiff's TCPA claims for calls that NSL allegedly made to collect on a FFELP consolidation loan); *Schneider v. Navient Solutions, LLC*, No. 16-CV-6760 CJS, 2018 WL 2739437, at *7 (W.D.N.Y. June 7, 2018) (granting summary judgment for defendant on TCPA claims arising from calls made to collect on FFELP loans); *Whalen v. Navient Sols., LLC*, 4:17-cv-00056-TWP-DML, 2018 WL 1242020, at *5 (S.D. Ind. Mar. 9, 2018) (dismissing TCPA claims related to calls made to collect on FFELP loans); *Weaver v. Navient Sols., Inc*, No. 5:16-cv1304, 2017 WL 3456325, at *3 (N.D. Ohio Aug. 11, 2017) (granting summary judgment on TCPA claims arising from calls made to collect a FFELP loan); *Hassert v. Navient Sols., Inc.*, 232 F. Supp. 3d 1049, 1052 (W.D. Wis. 2017) (dismissing with prejudice TCPA claims against NSL based on FFELP loan collection calls).

## II.   BACKGROUND

### A.  Bigley's Student Loans.

On or about August 31, 2005, Bigley executed a Federal Stafford Loan Master Promissory Note ("MPN") made under FFELP. **Exh. A** at 2, ¶ 5; **Exh. A-1**, MPN. Between September 6, 2005, and August 15, 2008, seven (7) subsidized Stafford Loan disbursements were made under the MPN in the total original principal amount of $25,000 ("FFELP Loans"). **Exh. A** at 2, ¶ 6. NSL services the FFELP Loans. *Id.* at 2, ¶ 7.  Other than the FFELP Loans, NSL does not service any other student loans that Bigley may have, including any private loans. **Exh. A** at 2, ¶ 8.

---

[1] A true and correct copy of the *Gaza* decision is attached hereto as **Exhibit D.**

**B.  FFELP Loans.**

FFELP loans are authorized under Title IV, Part B, of the Higher Education Act of 1965 ("HEA"), as amended, 20 U.S.C. §§ 1071–1087. FFELP loans were made by private lenders,[2] are guaranteed by guaranty agencies, and are reinsured under guaranty agreements with the Department of Education ("ED"). *Hassert*, 232 F. Supp. 3d at 1050. "Because of the reinsurance commitment, the federal government serves as the ultimate guarantor on each loan." *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 640 (7th Cir. 2015).

**C.  The Budget Act.**

The Budget Act amended the TCPA, effective November 2, 2015, to remove telephone calls from the statute's reach that are "made solely to collect a debt owed to or guaranteed by the United States." Bipartisan Budget Act of 2015, Pub. L. No. 114-74, § 301(a)(1), 129 Stat. 588 (2015) (codified as amended at 47 U.S.C. § 227(b)(l)(A)(iii)). In addition, Congress granted the Federal Communications Commission ("FCC") authority under the Budget Act to "restrict or limit the number and duration" of the newly exempted calls, and it directed the FCC to prescribe regulations to implement the Budget Act's amendment. *Id.* at § 301(a)(2), (b).

On August 12, 2016, the FCC issued a Report and Order containing "stop-calling" rules that would have largely undermined the Budget Act's exemption for federal debt collection calls. *See* **Exh. B**, *In re Rules & Regulations Implementing Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, 2016 Report and Order, FCC 16-99, at 24-25, ¶¶ 59-60 (August 11, 2016). Among the proposed rules were 47 C.F.R. § 64.1200(j)(1)(A) (limiting exempt calls to 3 calls every 30 days); 47 C.F.R. § 64.1200(j)(1)(A) (precluding exempt calls for the life of the debt after a stop-calling request); and 47 C.F.R. § 64.1200(j)(1) (providing that debtors may

---

[2] FFELP loans were discontinued in 2010 in favor of the Direct Loan program.

convey stop-calling requests through any reasonable means). *See* **Exh. B** at 31. None of these proposed rules took effect, however.

Importantly, the FCC provided in the 2016 Report and Order that its stop-calling rules only were to become effective 60 days after it published notice in the Federal Register that the Office of Management and Budget ("OMB") had approved the rules. **Exh. B** at 24-25, ¶¶ 59-60; 28, ¶ 72; *Schneider*, 2018 WL 2739437, at *3 (W.D.N.Y. June 7, 2018) (citations omitted). The FCC added that "both portions of the rules [including both the ability make and stop calls] must become effective for the regulatory scheme to be effective." **Exh. B** at 25, ¶ 60.

The FCC then withdrew its stop-calling rules <u>before</u> obtaining OMB approval.

**View ICR - OIRA Conclusion**

| | | |
|---|---|---|
| OMB Control No: 3060-0519 | ICR Reference No: 201701-3060-011 | |
| Status: Historical Inactive | Previous ICR Reference No: 201507-3060-005 | |
| Agency/Subagency: FCC | Agency Tracking No: CGB | |
| Title: Rules and Regulations Implementing the Telephone Consumer Protection Act (TCPA) of 1991, CG Docket No. 02-278 | | |
| Type of Information Collection: Revision of a currently approved collection | Common Form ICR: No | |
| Type of Review Request: Regular | | |
| OIRA Conclusion Action: Withdrawn and continue | Conclusion Date: 01/27/2017 | |
| Retrieve Notice of Action (NOA) | Date Received in OIRA: 01/17/2017 | |
| Terms of Clearance: Withdrawn at agency request. | | |

| | Inventory as of this Action | Requested | Previously Approved |
|---|---|---|---|
| Expiration Date | 09/30/2018 | 36 Months From Approved | 09/30/2018 |
| Responses | 147,368,997 | 147,434,797 | 147,368,997 |
| Time Burden (Hours) | 666,138 | 666,598 | 666,138 |
| Cost Burden (Dollars) | 2,745,000 | 2,745,000 | 2,745,000 |

Office of Mgmt. & Budget, *Information Collection Review*, *https://reginfo.gov/public/do/ PRAViewICR?ref_nbr=201701-3060-011* (last visited January 29, 2019). As a result, no notice was published in the Federal Register and the FCC's proposed rules never took effect. *See id.*

**D.  The Budget Act as a Bar to TCPA Claims on FFELP Loans.**

Because the FCC's stop-calling rules never took effect, courts around the country have held that the plain language of the TCPA bars such claims on FFELP loans as a matter of law. *See supra* at 2 (citing cases holding the Budget Act was a bar to TCPA claims based on calls made to collect on FFELP loans); *see also Sanford v. Navient Sols., LLC*, No. 1:17-cv-4356,

2018 WL 4699890, at *2 (S.D. Ind. Oct. 1, 2018) (granting judgment on the pleadings to NSL because the Budget Act was a "complete defense" to TCPA claims).

### E.  Bigley's Complaint.

Bigley filed suit against NSL on June 25, 2018. Bigley admits that he failed to pay his FFELP Loans as agreed, Compl. at 3, ¶ 9; but complains about the calls he allegedly received from NSL as a result, *id.* at 3, ¶ 10. Specifically, Bigley alleges that NSL began calling his cellular telephone to collect on the FFELP Loans and, though he asked NSL to stop calling on May 9, 2018, the calls continued. *Id.* at 3, ¶¶ 10-16. Citing NSL's collection efforts on his FFELP Loans after May 9, 2018, Bigley claims that NSL violated the TCPA. *Id.* at 3, ¶ 16.

This Court should grant summary judgment on Bigley's claims because, even assuming that his alleged May 9, 2018 stop-calling request effectively revoked his prior consent to receive calls from NSL to the "3443" number, the calls that NSL made to Bigley were to collect on student loans guaranteed by the United States and, thus, were not subject to the TCPA.

### III.    STATEMENT OF UNDISPUTED MATERIAL FACTS

For the purposes of this motion, the following facts are undisputed:

1.      NSL is the servicer of Bigley's FFELP Loans. **Exh. A** at 2, ¶ 7.

2.      Bigley gave prior express consent to receive calls from NSL to his cellular telephone on the FFELP Loans, including calls made using an ATDS and/or using a prerecorded message or artificial voice. **Exh. A** at 2, ¶ 9; **Exh. A-2**, June 22, 2013 Forbearance Request (consenting to calls to the cellular telephone number ending "3443" from "the lender, the guaranty agency, [ED], and their respective agents" using an ATDS or artificial or prerecorded messages); **Exh. A-3**, October 29, 2015 IDR Plan Request (authorizing the "loan holder to which

[Bigley] submit[ted] this request (and its agents or contracts) to contact [him]" at the "3443"

number using an ATDS or artificial or prerecorded messages).

3. Bigley failed to pay his FFELP Loans as agreed. Compl. at 2, ¶ 9; **Exh. A** at 3, ¶ 12.

4. After Bigley failed to pay his FFELP Loans as agreed, NSL began calling him at the telephone number ending "3443" in order to collect on his FFELP Loans. Compl. at 2, ¶¶ 10, 16; **Exh. A** at 3, ¶ 13.

5. May 9, 2018 is the earliest date on which Bigley claims that he asked NSL not to call him at the number ending "3443." Compl. at 2, ¶ 12.

6. On May 9, 2018, NSL made contact with Bigley during an outbound call placed to collect on his FFELP Loans ("May 9, 2018 Call"). **Exh. A** at 3, ¶ 16.

7. NSL initiated 50 calls to Bigley at the "3443" number using its Interactive Intelligence ("ININ") dialing system[3] after the May 9, 2018 Call. **Exh. A** at 3, ¶ 18; **Exh. A-4**, Call Logs; **Exh. C**, Rule 1006 Summary; *see also* Compl. at 2, ¶¶ 14-15.

---

[3] Bigley alleges that NSL's ININ Dialer is a "predictive dialer." Compl. at 3, ¶ 18. As a matter of law, predictive dialers (*i.e.*, dialers that merely dial from a list of stored numbers) no longer qualify as ATDSs after the D.C. Circuit's ruling in *ACA International v. Federal Communications Commission*, 885 F.3d 687 (D.C. Cir. 2018). *See, e.g., Dominguez v. Yahoo, Inc.*, 894 F. 3d 116, 121 (3d Cir. 2018) (granting summary judgment in favor of Yahoo because plaintiff had provided no evidence that the defendant's dialer "had the present capacity to function as an autodialer by generating random or sequential telephone numbers and dialing those numbers"); *King v. Time Warner Cable Inc.*, 894 F.3d 473, 479 (2d Cir. 2018) (holding that only a device that "currently has features that enable it to perform the functions of an autodialer" (i.e., generate and dial random or sequential numbers) is an ATDS); *Thompson-Harbach v. USAA Federal Savings Bank*, No. 15-cv-2098-CJW-KEM, 2019 WL 148711, at *13 (N.D. Iowa Jan. 9, 2019) (granting summary judgment in favor of defendant and finding that the defendant's system did not qualify as an ATDS because it does not have the capacity to store or produce numbers to be called using a "random or sequential number generator"); *Roark v. Credit One Bank, N.A.*, No. 16-173 (PAM/ECW), 2018 WL 5921652, at *3 (D. Minn. Nov. 13, 2018), *appeal docketed*, No. 18-3643 (8th Cir. Dec. 12, 2018) ("[T]he correct inquiry is whether a device can generate numbers to dial either randomly or sequentially"); *Glasser v. Hilton Grand Vacations Co., LLC*, No. 8:16-CV-952-JDW-AAS, 2018 WL 4565751, at *4 (M.D. Fla. Sept. 24, 2018), *appeal docketed*, No. 18-14499 (11th Cir. Oct. 23, 2018) (device was not an ATDS because "[n]othing in the record demonstrates that Defendant's IMC System generated numbers and then called them"). Based on the "complete defense" available to NSL under the Budget Act, however, this Court need not reach that issue.

8.      These 50 calls are all of the calls that NSL made to the "3443" number in connection with Bigley's FFELP Loans after the May 9, 2018 Call. **Exh. A** at 2, ¶ 14; **Exh. C**.

9.      All of the calls made by NSL to Bigley at the "3443" number after May 9, 2018 were made solely in an attempt to collect on his federal FFELP Loans. **Exh. A** at 3, ¶ 19.

## IV.     SUMMARY JUDGMENT STANDARD

Summary judgment must be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A fact is material only if it "might affect the outcome of the suit under the governing law." *Id.* A dispute is genuine only if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

## V.     SUMMARY OF THE ARGUMENT

By amending the TCPA through the Budget Act, Congress eliminated liability for federal student loan collection calls. NSL, as the servicer of Bigley's FFELP Loans, therefore did not need his prior consent to call his cellular telephone when attempting to collect on his federal loans after the Budget Act's effective date: November 2, 2015. Each of the 50 calls placed by NSL were an attempt to collect on Bigley's FFELP Loans—federal student loans guaranteed by the United States. Therefore, Bigley's TCPA claims fail as a matter of law.

## VI.     ARGUMENT & AUTHORITIES

### A.  The Budget Act amendment bars Bigley's TCPA claims as a matter of law.

As discussed above, Congress amended the TCPA to remove all calls made "to collect a debt owed to or guaranteed by the United States" from the prior consent requirement at issue.

*See* 47 U.S.C. § 227(b)(l)(A)–(B). Congress directed the FCC to prepare regulations and "stated that such regulations could, if the FCC chose, limit 'the number and duration of calls made to a telephone number assigned to a cellular telephone service to collect a debt owned [sic] to or guaranteed by the United States.'" *Schneider*, 2018 WL 2739437, at *3 (quoting 47 U.S.C. § 227(b)(2)(H)). The FCC issued the 2016 Report and Order to enact such regulations; however, "[d]espite the fact that only certain parts of the proposed regulations required approval by the [OMB], the FCC chose not to have any of the regulations take effect until OMB gave such approval."[4] *Schneider*, 2018 WL 2739437, at *3. OMB never gave that approval. *See supra.*

1.   The FCC's stop-calling rules did not take effect.

The FCC's election not to make its rules effective is important because, after the FCC published its 2016 Report and Order, its "final" stop-calling rules were withdrawn and never added to the Code of Federal Regulations. *See* 47 C.F.R. § 64.1200 (lacking proposed subsection (j)). Since the FCC acted to prevent the implementation of the stop-calling rules before their effective date, the rules do not represent the policy of the agency and are not legally binding.

2.   The plain text of the TCPA, as amended, governs Bigley's claims.

Because the FCC's stop-calling rules never to effect, the plain language of the TCPA continues to govern claims like Bigley's. *See Whalen*, 2018 WL 1242020, at *4 ("The amendment became effective on November 2, 2015, when Congress enacted the [Budget Act]. [. . . .] The FCC (and ED) lacks authority to amend a statute of Congress, and thus, the rules and regulations of the FCC could not change the effective date of the TCPA amendment . . . .");

---

[4] By choosing to suspend the effective date of *certain* of the final rules that could have become effective without OMB approval, the FCC judged that *all* of the rules enacted under its Section 301(b) authority—rules governing the placement of calls and means to stop calls—must become effective at the same time "for the regulatory scheme to be effective." **Exh. B** at 25, ¶ 59.

*Schneider*, 2018 WL 2739437, at \*5–6 (rejecting the plaintiff's contention that the Budget Act never took effect as a result of the FCC's failure to "prescribe implementing regulations").

As the FCC has recognized, amended Sections 227(b)(l)(A) and (B) of the TCPA "now explicitly *do not* make it unlawful for anyone to make autodialed, artificial-voice, or prerecorded-voice calls to both wireless phones and residential landline phones, without the prior express consent of the called party, provided that the calls are 'made solely to collect a debt owed to or guaranteed by the United States.'" *In re Rules & Regulations Implementing Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Notice of Proposed Rulemaking, FCC 16-57 at 2, ¶ 4 & n.16 (May 6, 2016) (emphasis in original) (quoting Budget Act § 301(a)(1) (amending 47 U.S.C. § 227(b)(1)(A)); *see also Workman v. Navient Solutions, Inc.*, No. 1:16-cv-00457-JMS-DKL, 2016 WL 4088716, at \*1–2 (S.D. Ind. July 27, 2016).

Therefore, the controlling text before this Court states:

**(1) Prohibitions**

It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—

**(A)** to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—

[. . . ]

(iii) to any telephone number assigned to a . . . cellular telephone service . . . , unless such call is made <u>solely to collect a debt</u> owed to or <u>guaranteed by the United States</u>[.]

47 U.S.C. § 227(b) (amended language emphasized). Considering this, Bigley's claims must fail because each call at issue was made solely to collect on a debt guaranteed by the United States.

*a. NSL's calls were made solely to collect on the FFELP Loans.*

The Complaint makes clear that NSL's calls were "made solely to collect" on Bigley's FFELP Loans. 47 U.S.C. §227(b); *see* Compl. at 3, ¶ 10 ("After he had defaulted on his student loan, Plaintiff began receiving telephone calls from Defendant on his cellular telephone."); *id.* at 3, ¶ 13 ("When Plaintiff asked Defendant to stop calling him, the live representative responded, 'we can call you, you owe us money.'"); *id.* at 3, ¶ 19 (alleging that "Defendant's collection calls" damaged him). NSL's summary judgment evidence further confirms that it was attempting to collect on the FFELP Loans when calling Bigley after the May 9, 2018 Call. **Exh. A** at 3, ¶ 19. Thus, there is no genuine dispute whether NSL's calls were made to collect on the FFELP Loans.

*b. The FFELP Loans are guaranteed by the United States.*

"The FFEL Program is an umbrella term for four different guaranteed student loan programs: the Robert T. Stafford Federal Student Loan Program, 20 U.S.C. § 1071; the Federal Supplemental Loans for Students Program, 20 U.S.C. § 1078–1; the Federal PLUS Loan Program, 20 U.S.C. § 1078–2; and the Federal Consolidation Loan Program, 20 U.S.C. § 1078–3." *Morgan v. Markerdowne Corp.*, 976 F. Supp. 301, 308 n.5 (D.N.J. 1997) (emphasis added).

Because Bigley's student loans were made under FFELP, they are loans guaranteed by the United States. *See, e.g.*, *Whalen*, 2018 WL 1242020, at *5 (dismissing TCPA claims related to calls made to collect on FFELP loans); *Weaver*, 2017 WL 3456325, at *3 (granting summary judgment on TCPA claims arising from calls made to collect a FFELP loan); *Hassert*, 232 F. Supp. 3d at 1050 (recognizing "FFEL loans are debts guaranteed by the United States"); *see also Bible*, 799 F.3d at 640 (recognizing the government is the "ultimate guarantor" of FFELP loans).

There is no genuine dispute, then, whether the phone calls at issue in this case were made by NSL solely in an attempt to collect a debt guaranteed by the United States.[5] As a result, this Court should follow the many others that have held the TCPA, as amended in the Budget Act, provides a "complete defense" to claims like Bigley's. *Sanford*, 2018 WL 4699890, at *2.

For example, in *Schneider v. Navient Solutions, LLC*, No. 16-CV-6760 CJS, 2018 WL 2739437 (W.D.N.Y. June 7, 2018), a borrower brought similar claims under the TCPA against NSL for calls made to his cellular phone when collecting on his federal FFELP loans. *Id.* at *1. The court granted summary judgment for NSL, holding that it "was entitled to call [p]laintiff, even without his prior consent" because it "was calling [p]laintiff about a debt owed to or guaranteed by the United States." *Id.* at *5. In so holding, the court rejected plaintiff's contention that the amended TCPA language never took effect as a result of the FCC's failure to "prescribe implementing regulations" after the Budget Act's passage, because "such fact [did] not mean the statute did not become effective as soon as it was signed by the President." *Id.* at *5–6.

The United States District Court for the Northern District of Alabama's decision in *Green v. Navient Solutions, LLC*, No. 1:17-CV-1453-VEH, 2018 WL 6303775 (N.D. Ala. Nov. 29, 2018), also is instructive. In it, the *Green* court rightly held that the TCPA, as amended by the Budget Act, barred the plaintiff's TCPA claims for calls that NSL allegedly made to collect on a FFELP consolidation loan. *See id.* at *5-7 (concluding the 2016 FCC Order—and its proposed stop-calling regulations—never went into effect). Citing the plain language of the statute, the court held that NSL's alleged debt collection calls to the plaintiff were exempt from the TCPA's prior express consent requirement. *Id.* at *7 & n.19. The court accordingly granted summary judgment in favor of NSL and dismissed the case with prejudice. *Id.*; *see also* **Exh. D**, *Gaza v.*

---

[5] Indeed, NSL only services the FFELP Loans for Bigley. **Exh. A** at 2, ¶ 8. It does not service any of his private student loans – to the extent he has any such loans. *Id.*

*Navient Sols., LLC*, No. 8:18-cv-1049-MSS-SPF, at *5 (M.D. Fla. Jan. 23, 2019), ECF No. 36 (holding any calls placed by NSL seeking payment of the federally guaranteed loans at issue "were exempt from the provisions of the TCPA by the plain language of the statute").

This Court should reach the same conclusion and grant summary judgment on Bigley's TCPA claims against NSL. The undisputed summary judgment evidence shows each call at issue was made solely to collect a debt guaranteed by the United States after the Budget Act became effective in November 2015. *See* Compl. at 2, ¶¶ 12-15. As Congress expressly exempted these calls from TCPA liability, NSL is entitled to summary judgment as a matter of law.

3.   Applying the plain text of the Budget Act is consistent with Congress's intent.

Bigley's TCPA claim involves precisely the type of calls that Congress intended to exempt from the TCPA. In the lead-up to the Budget Act's passage, ED called for Congress to "change the law to ensure that servicers can contact borrowers using modern technology." *See* **Exh. E**, U.S. Department of Education, *Strengthening the Student Loan System to Better Protect All Borrowers*, at 16, October 1, 2015), https://www2.ed.gov/documents/press-releases/strengthening-student-loan-system.pdf (last visited January 29, 2019).

ED explained that "[i]f servicers are able to contact a borrower, they have a much better chance at helping that borrower resolve a delinquency or default." *Id.*

> Many student loan borrowers, especially those that may just be graduating, move frequently in addition to no longer having landline phone numbers. As such, it can be difficult for servicers to find a borrower except by using a cell phone number. Current Federal law prohibits servicers from contacting borrowers on a cell phone number using an auto-dialer unless the borrower has provided explicit consent to be contacted at that number. With phone numbers changing or being reassigned on a regular basis, it is virtually impossible for servicers to use auto-dialing technology. The President's 2016 Budget proposed amending this law to allow the use of automated dialers to contact borrowers to inform them of their federal repayment obligations and benefits like Pay As You Earn, or Rehabilitation, in the case of a defaulted borrower. [. . . .] Congress should change the law to ensure that servicers can contact borrowers using modern technology and help them get into the right repayment plan and avoid the consequences of default or resolve their default.

*Id.* Congress did exactly that through the Budget Act amendment to the TCPA, enabling servicers to use modern dialing equipment to call delinquent federal student loan borrowers without fear of suit under the TCPA. This Court therefore should find the TCPA is a complete defense to Bigley's TCPA claims and grant summary judgment in favor of NSL.

## VII.    CONCLUSION

There is no genuine issue of material fact before the Court. All of NSL's calls to Bigley after his earliest alleged revocation on May 9, 2018 were made to collect on his delinquent, federally guaranteed student loans. Thus, all of the calls at issue fall squarely within the TCPA's express exemption of TCPA liability for calls made "to collect a debt owed to or guaranteed by the United States," and NSL is entitled to summary judgment as a matter of law.

Dated: February 20, 2019

Respectfully submitted,

*/s/ Adam C. Ragan*
Adam C. Ragan
State Bar No. 24079172
**HUNTON ANDREWS KURTH LLP**
1445 Ross Ave., Suite 3700
Dallas, Texas 75202
Telephone: 214.468.3322
Facsimile: 214.979.3903
aragan@huntonAK.com

**COUNSEL FOR DEFENDANT**
**NAVIENT SOLUTIONS, LLC**

## CERTIFICATE OF SERVICE

I certify that on February 20, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification of the filing to all counsel of record.

*/s/ Adam C. Ragan*
Adam C. Ragan